[See Case No. 14,339.]

UNDERWOOD (JACOBS v.). See Case No. 7,163.

UNDERWOOD (RIDGEWAY v.). See Case No. 11,815.

## Case No. 14,341.

### The UNDERWRITER.

[4 Blatchf. 94.] [2]

Circuit Court, S. D. New York. Sept. 17, 1857.

SALVAGE—AMOUNT OF COMPENSATION—APPORTIONMENT—COSTS.

1. In this case, the service was a salvage service, and is entitled to a salvage compensation.

[Cited in The Williams, Case No. 17,710.]

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

2. Reasons stated, why the compensation allowed by the district court was too large.

3. The character of the evidence as to the injury suffered by the salving vessel, commented on.

4. Apportionment of the salvage.

5. No costs allowed on either side, in this court.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court by the owners of the steamship Delaware, against the ship Underwriter, to recover salvage for contributing to the rescue of the Underwriter, which was stranded on Squam Beach, in April, 1854, laden with a cargo and passengers. The Delaware had started on one of her usual trips from the city of New York to the city of Philadelphia, and, on the morning of the 17th of April, discovered the Underwriter in distress. The storm had subsided, but the wind was fresh from the land, and the sea was rolling heavily upon the vessel. She had on board between six and seven hundred passengers. Efforts were being made from the shore to communicate with her by lifeboats and otherwise, but without success. The master of the Delaware neared her, and sent a boat to communicate with the captain and ascertain if he desired assistance. The hands in the boat succeeded in the communication, and learned from the captain that he desired the Delaware to remain and furnish all the assistance in her power. Efforts were made to get lines attached to a hawser, but without success. The boat, in the course of her service, capsized, from the violence of the sea, but all the hands were saved except one, by a life-boat from the shore. The Delaware remained at the place during the day and succeeding night and until the next morning, when assistance was sent down from the city by the owner of the Underwriter, and the master of the Delaware was told that his services were no longer required, and she left. The Underwriter was finally saved by taking off her passengers, and transferring her cargo of goods and merchandise to lighters, and by the aid of pumps and heavy anchors, and the power of steam-tugs, all of which occupied some five or six days. The crew of the Delaware consisted of some thirty hands. The Underwriter, it was agreed, was worth $56,000; the Delaware about $80,000, and her cargo $90,000. There was also some evidence that the steamer was damaged by means of the deck freight, and otherwise, from remaining at anchor in a heavy sea. The district court held the service rendered by the Delaware to have been a salvage service, and awarded to her owners and crew the sum of $5000. The claimant appealed to this court.

George J. Cornell, for libellants.
Francis B. Cutting, for claimant.

NELSON, Circuit Justice. I agree with the court below that the service of the Delaware might properly be regarded as a salvage service; and that the compensation was rightfully made in conformity with the principles applicable to such a service. There appears to have been great excitement and confusion among the passengers on board of the Underwriter at the time of the arrival of the steamer; and her presence, the advice given to the captain, and the consent to remain and render all the assistance practicable, together with the efforts made for the purpose, until the means of assistance arrived from the owner, may well have contributed somewhat to the saving of the vessel, and furnish a claim to compensation beyond that of mere labor and service. But, comparing this assistance of the steamer and her hands, including her detention and damage, with the service and expense which were subsequently required and rendered by the owner before she was rescued, I cannot but think that the compensation awarded was too high, and that the rate, if extended to the efficient service and expense in the saving of the vessel, would, in the aggregate, constitute a salvage allowance beyond the principles generally admitted as governing cases of this description. I think, also, that the injury to the steamer, claimed to have been occasioned while she was detained, has been greatly exaggerated. No repairs seem to have been made upon her for a month after the alleged injury occurred, the vessel being, in the meantime, engaged in her usual trips; and the bills of repairs have not been produced, nor is it pretended that the cost approached the estimate furnished. The shipwright states that he repaired her but partially, and then gives us a general estimate of what it would have cost to repair her thoroughly. He states the expense at $2500 or $3000. Another witness states that it would have cost $800 or $1000 to put her joiner work in good order. All this is very unsatisfactory, and subject to abuse in making up an account to the extent of the injuries to the vessel.

I think $2500 in this case a liberal compensation to the owners, master and hands of the Delaware for the detention and service, including the injury to the vessel, and shall modify the decree so as to reduce it to this amount, without costs on either side in this court, and apportion the $2500 as follows: $2000 to the owners of the Delaware; $100 to the master, and the same to the mate; and the residue to be divided equally among the representatives of Leland, and the other persons composing the crew of the vessel.